[No. 9933.   Department One.   June 18, 1912.]

HENRY GILCHER, *Respondent*, v. SEATTLE ELECTRIC
COMPANY, *Appellant*.[1]

CARRIERS—INJURIES TO PERSONS ON TRACK—EVIDENCE—INSTRUC-
TIONS. In an action for injuries by one run over by a street car,
where plaintiff, who had been drinking, claimed that he was knocked
down by a west-bound car and thrown across parallel tracks and
run over by an east-bound car while unconscious from the first ac-
cident, and there was no other evidence as to how he came to
be on the tracks, or that he could have been discovered in that posi-
tion in time to stop the east-bound car, the defendant is entitled to
an instruction that it is not liable if the jury find that the first ac-
cident did not happen.

SAME—LIABILITY. In such a case, the fact that the headlight on
the east-bound car was obscured, so that the motorman could not
see ahead as far as usual, would not render the company liable in
the absence of evidence that the plaintiff had been on the tracks a
sufficient length of time to have been discovered.

SAME—LAST CLEAR CHANCE. In such a case, the doctrine of the
last clear chance does not obtain.

Appeal from a judgment of the superior court for King
county, Gay, J., entered April 15, 1911, upon the verdict of
a jury rendered in favor of the plaintiff, for personal in-
juries sustained by a passenger knocked down and run over
by street cars.   Reversed.

*James B. Howe* and *A. J. Falknor*, for appellant.

*Robert W. Jennings*, for respondent.

CROW, J.—This action was commenced by Henry Gilcher
against Seattle Electric Company, a corporation, to recover
damages for personal injuries.   From a verdict and judg-
ment in plaintiff's favor, the defendant has appealed.

Appellant owns and operates a double track cable street
railway, in the city of Seattle, for a distance of thirty blocks
or more on Yesler avenue, from Pioneer square on the west,

[1]Reported in 124 Pac. 218.

to Lake Washington on the east. West-bound cars are operated on the northerly track and east-bound cars on the southerly. Respondent in substance alleged that, on October 1, 1910, he signaled a west-bound car near 27th street, indicating his intention to become a passenger; that the gripman stopped a short distance west of the street intersection; that respondent attempted to board the car; that while he was doing so the gripman negligently, suddenly, and without warning started the car; that respondent was thereby thrown with great force to the street pavement over and across the southerly track; that he sustained severe injuries about his head, which immediately rendered him unconscious and placed him in a position of imminent danger; that appellant's servants in charge of the west-bound car made no effort to ascertain what had become of respondent, but left him in his dangerous position; that while he was thus lying across the southerly track in an unconscious condition, one of appellant's east-bound cars passed over him, causing the injuries of which he complains; that his position of danger ought to have been known to, or discovered by, appellant, had it observed due care in the equipment and operation of its west-bound car; that appellant was negligent in failing to see that a careful watch or lookout was maintained by its gripman in charge of the west-bound car, and in failing to see that the car was equipped with an unobstructed headlight or with a suitable fender.

Appellant pleaded the defense of contributory negligence; affirmatively alleging that, on the night of October 1, 1910, while it was raining, and at a very dark place between 26th and 27th avenues on Yesler way, respondent, without warning to appellant, either fell or lay down upon or near the track over which appellant's east-bound cars were operated, and that respondent was then intoxicated. The answer also denied all allegations of negligence pleaded in the complaint.

The undisputed evidence shows that respondent, a man about fifty-six years of age, had resided in Alaska for many

years; that he was in Seattle on a brief visit; that about nine or ten o'clock on the evening of October 1, 1910, in response to a telephone message, he went to a dwelling house near 27th avenue, on the south side of Yesler street, to call upon a woman whom he had known for many years; that another woman was at the house; that during the day respondent had taken several drinks of whiskey and port wine; that he took two more such drinks while at the house; that later in the evening one of the women telephoned into the city for a lunch consisting of oysters, crackers, and several bottles of beer, which was delivered by a messenger boy; that the messenger boy left the house first; that respondent left about twenty or thirty minutes later; that about 1:20 a. m., an east-bound cable car, operated on the southerly track, ran over respondent, cutting off his left foot and the toes of his right; that he was then lying south of the southerly track with his feet across the rail; that neither the gripman nor any other person saw him until the car was within five or six feet of him; that the length of the car was from thirty-five to forty feet, and that it could not be stopped within less than half its length. On other points the evidence was conflicting.

It will be noted that respondent claims (1) that, when attempting to board the west-bound car, he was, by reason of appellant's negligence, thrown upon the pavement and across the southerly track, where he was left in an unconscious condition; (2) that, while he was still there, an east-bound car ran over his feet and injured him. In the briefs these two alleged accidents are called the first and second accidents, and we will thus mention them.

On the trial appellant vigorously contended that the first accident never happened. Its evidence strongly indicated that respondent did not leave the dwelling house until after the last west-bound car had gone into the city. The gripmen, conductors, and others on the last two cars, and the messenger boy, who rode in on the last car, testified that the

first accident did not occur; while respondent as positively testified that it did. The evidence on this question, although conflicting, seems to preponderate in appellant's favor, yet the issue involved was for the jury. It is conceded that, at the instant the east-bound car ran over respondent's feet, he was lying just south of the track with his feet across the south rail. If he had in fact been thrown and left there in an unconscious and helpless condition by reason of appellant's previous negligence involved in the alleged first accident, it would necessarily follow that appellant would be liable for the damages sustained from both the first and the second accident. On the other hand, if the first accident did not occur, then appellant was in no way responsible for respondent's perilous position at the instant of the second accident; and any liability upon its part would have to be predicated upon some act of negligence not involved in the alleged first accident. Appellant, in substance, requested the trial court to instruct the jury that, if they found the first accident did not occur, they must find for appellant. This instruction was refused, and upon its refusal, appellant assigns error. Although the issue of the first accident was for the jury, we cannot, from the general verdict, conclude whether they did or did not find that it had occurred. It may have been that their verdict was based on the second accident only. The trial judge, when passing upon the motion for a new trial, gave expression to his views in the following language:

"The only trouble in this case is this; there is not a human being on earth apparently that knows how that man got on that track. That is the only trouble there is in it. There is no question in the world that he had drunk a little liquor in this house on this night that he was hurt, and that he went out of that house and got on some kind of a car line, and the only evidence that really is positive on earth is that he was found bleeding and mangled and hurt and injured and terribly injured. . . . I became fully convinced on this trial the man didn't attempt to come on what we call the inbound

train. . . . I became convinced of that as a physical fact. Now, how he got on the other car line, you know, the outbound car line, whether it was because he was drunk, I couldn't tell. If I had been a juryman I couldn't have told. . . . This court doesn't believe that the plaintiff in this case ever attempted to come into town on that inbound car. I mean that he ever got on board of it. . . . I cannot figure it out by the physical facts."

Were we to assume, what may have been the fact, that the first accident did not occur, and that the jury would have so found, then in passing upon the propriety of the instruction requested and refused, it would become necessary for us to inquire whether the second accident alone would sustain a recovery under the evidence. There was evidence which, although disputed, was sufficient to sustain a finding that respondent was badly intoxicated at the time of his injury. He was lying on the street on a rainy night midway between two cross-streets, with his body angling to the south and west and with his feet upon the track. He was not seen by the gripman in time to stop the car. No other person had previously seen him on or near the track. If the first accident did not occur, no one has told how he came to be there, or how long he had been there. With the first accident eliminated, appellant was neither directly nor indirectly responsible for his position, and would not be liable unless it was guilty of some negligent or wrongful act after it actually discovered him, or which prevented his timely discovery.

It is contended that the headlight on the west-bound car was obscured by a sign which had fallen over it. We think the evidence shows that it was not thus obscured prior to the accident, but that the car in passing over respondent's legs sustained a severe jolt, which caused a signboard to be shaken from its position and to some extent obscure the headlight. Assuming, however, that the headlight was thus obscured before the accident, and that the gripman could not see as far as he would had it been in proper condition, yet

there is no evidence showing how long respondent's feet had been upon the track. For all that appears, he may have been lying upon the street and may have rolled or moved upon the track just before the car passed. Or he may have fallen upon the track just about that time. There is an utter absence of evidence sufficient to sustain a finding that his feet were upon the track at any time prior to the instant he was first seen by the gripman and a passenger who stood on the front end of the car. It is undisputed that he was then only six feet ahead of the car. There is no contention that the car was operated at an excessive or dangerous rate of speed, nor was there any evidence that the fender was not a suitable one as alleged in the complaint. With the first accident eliminated, the only negligence which respondent urges is that the headlight was obscured. His contention is that, had it been in proper condition, the gripman's view would have extended further along the track; that he could then have seen respondent a distance of forty or fifty feet; and that he could have stopped the car in time to have avoided the accident. The difficulty with this contention is that it assumes respondent had been upon the track a sufficient length of time to have been seen before the car came too close to be stopped. Such a finding by the jury would have been the result of surmise and speculation as to when appellant lay down, rolled upon, or fell upon the track. Respondent urges the last chance doctrine to fix appellant's liability. But that doctrine has no application to the evidence before us, as it does not appear that the gripman did see, or in the exercise of due care could have seen, respondent in time to stop the car. On all the evidence, we conclude that, with the first accident eliminated, the circumstances of the second accident do not show any negligence for which the appellant would have been liable. The instruction requested should therefore have been given, and its refusal constituted reversible error.

Other assignments need not be discussed, as they will not

be material upon a retrial. The judgment is reversed, and the cause remanded for a new trial.

DUNBAR, C. J., PARKER, GOSE, and CHADWICK, JJ., concur.