[No. 11199. Department Two. September 3, 1913.]

## CONSTANTINO T. Mosso, *Respondent*, v. E. H. STANTON COMPANY, *Appellant*.[1]

MUNICIPAL CORPORATIONS — STREETS — NEGLIGENT USE —CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. The contributory negligence of a pedestrian, struck by a motor truck, in failing to look before starting diagonally across the street, is not indisputably established by physical facts, as a matter of law, from the fact that he had an unobstructed view for 327 feet and was struck before going 40 feet, and the truck could have traveled but 200 feet, upon the estimate of the witnesses as to the speed of both the plaintiff and the truck; since the speed was only estimated and was a question for the jury.

SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. The contributory negligence of a pedestrian in starting diagonally across a street when a motor truck was approaching from the rear, does not avoid a recovery, as a matter of law, where it appears that he had reached the center of the street outside of the zone of danger from the rear, and would not have been struck except for the negligence of the driver of the truck who failed to keep a proper lookout or sound a warning, and did not drive on the right side of the street as near the curb as possible as required by a city ordinance; since he was not necessarily negligent at the time of the injury.

NEGLIGENCE — LAST CLEAR CHANCE — CONTRIBUTORY NEGLIGENCE—PLEADING, ISSUES AND PROOF. In an action for personal injuries, the question whether the defendant could have avoided the accident by the observance of the rule of "last clear chance" may be submitted, although the complaint does not admit contributory negligence, where the answer denied negligence and alleged plaintiff's contributory negligence, which was put in issue by the reply; since the doctrine of "last clear chance" merely relieves negligence on the plaintiff's part of its contributory character, and may be submitted without a plea in confession and avoidance.

[1]Reported in 134 Pac. 941.

MUNICIPAL CORPORATIONS—NEGLIGENT USE OF STREET—LAST CLEAR
CHANCE—PLEADING—CERTAINTY. In the absence of a motion to make
more specific, an allegation that defendant was operating a motor
truck recklessly and without regard to the safety of pedestrians, is
sufficient to admit evidence of a violation of the last clear chance
rule.

SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. A pedes-
trian looking back before starting across a street, and having an un-
obstructed view for over 300 feet, without seeing an approaching
truck, is not negligent, as a matter of law, in failing to continuously
keep a lookout, especially where he was carrying a sack of grain
upon his shoulder.

SAME—LAST CLEAR CHANCE—CONTRIBUTORY NEGLIGENCE—EFFECT.
Where peril to a pedestrian is actually discovered by the driver of a
motor truck, the failure to exercise reasonable care to avoid an in-
jury will render the driver liable, notwithstanding the continuance
of plaintiff's negligence up to the instant of the injury.

SAME—INSTRUCTIONS. The last clear chance rule applies, without
regard to the continuing negligence of the pedestrian up to the in-
stant of the injury, where a pedestrian has negligently placed him-
self in a dangerous situation upon the highway, and the driver in the
control of a dangerous agency actually sees the situation and should
appreciate the danger; also, where the driver could by keeping a
reasonably careful lookout, have discovered and appreciated the
danger in time to avoid an injury, regardless of prior contributory
negligence by the pedestrian whenever such contributory negligence
has terminated or culminated in a situation from which he could
not extricate himself by the exercise of ordinary care; hence it is
error to give instructions, rendering the defendant liable for negli-
gence in failing to discover plaintiff's peril, regardless of whether
plaintiff's contributory negligence had terminated or culminated in
a situation of danger from which he could not extricate himself by
the exercise of ordinary care.

TRIAL—INSTRUCTIONS—CONFLICTING INSTRUCTIONS. Erroneous in-
structions are not cured by a proper one in direct conflict, since it is
impossible to know what effect they had on the verdict.

NEGLIGENCE — PROXIMATE   CAUSE — INSTRUCTIONS — LAST   CLEAR
CHANCE. In an action for negligence, where there are counter
charges of contributory negligence, the jury may find the negli-
gence of either party proximate, and that of the other remote; hence
instructions as to proximate cause are proper, even though there
is no application of the rule of last clear chance.

Appeal from a judgment of the superior court for Spokane
county, Pendergast, J., entered February 3, 1913, upon the

verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a pedestrian struck by a motor truck. Reversed.

*Cannon, Ferris & Swan,* for appellant.

*Don F. Kizer,* for respondent.

ELLIS, J.—The plaintiff was struck and injured by defendant's motor truck, at a point in Howard street, in the city of Spokane, a few feet south of the concrete bridge crossing the Spokane river. The Centennial mill is situated just north of the Spokane river on the west side of Howard street, which extends from in front of the mill in a straight line southerly for a distance of about 400 feet, the bridge being the same width as the street. There is no cross-walk throughout this distance, nor for over three blocks to the south. A double-tracked street car line occupies the middle of the street. On October 27, 1911, at about 15 minutes past noon, the plaintiff, having purchased a two-bushel sack of chicken feed at the Centennial mill, carrying it on his left shoulder, walked down the west side of Howard street for a distance of something over 300 feet, to a point estimated by different witnesses at from 15 to 35 feet south of the south end of the bridge, at which point he stepped into the street and proceeded diagonally across the street with the intention of reaching the sidewalk on the east side. He testified that, before stepping into the street, he turned and looked north along the street and bridge, there being an unobstructed view to the Centennial mill, and saw no vehicle of any kind; that, when he had proceeded to about the middle of the street and was between the two car tracks, something struck him in the back and left side rendering him unconscious. The testimony of three other witnesses introduced in behalf of the plaintiff, was to the effect that he had reached a point between the two car tracks about the middle of the street, when he was struck in the back, "doubled up" in a crouching position under the front end of the motor truck, and shoved a distance of three

or four feet; that the motor was running "pretty fast" or "12 to 15 miles an hour," did not swerve or change its direction as it approached the plaintiff, and stood about the middle of the street between the two car tracks and straight with the street when it came to a stop.

The testimony of the chauffeur and three other witnesses who testified in defendant's behalf was to the effect that the plaintiff was struck either a little east of, or a short distance west of, the west rail of the west car track and shoved over onto the track; that the truck swerved toward the car track just as it struck him, and came to a standstill pointing slightly to the southeast. The chauffeur testified that the man stepped into the street immediately in front of the motor truck, and that the brakes were at once applied and the machine stopped as quickly as possible. The machine was muffled, and all the witnesses agree that it made very little noise. All of the witnesses testified that they failed to hear any horn or gong sounded from the motor truck. Neither of the men in the motor truck testified to the giving of any alarm, save that one of them said he called to the man just as he was struck. The plaintiff suffered a fracture of the second lumbar vertebra, causing a deformity of the back and a permanent injury. The jury returned a verdict for $5,500. At appropriate times the defendant moved for a directed verdict, for judgment notwithstanding the verdict and for a new trial, all of which were denied. Judgment was entered on the verdict. The defendant has appealed.

I. It is contended that the undisputed physical facts show that respondent did not look north before starting across the street, and hence was guilty of contributory negligence, as a matter of law, under the rule announced in *Fluhart v. Seattle Elec. Co.*, 65 Wash. 291, 118 Pac. 51; *Helliesen v. Seattle Elec. Co.*, 56 Wash. 278, 105 Pac. 458, and *Skinner v. Tacoma R. & P. Co.*, 46 Wash. 122, 89 Pac. 488. The so-called physical facts relied upon are respondent's estimate that he was walking at the rate of about three miles an hour,

and that he had walked about 40 feet from the curb before he was struck; that the highest estimate of any witness as to the speed of the motor truck was 15 miles an hour, and that the distance, with an unobstructed view from the Centennial mill to the point of accident, was 327 feet. It is argued that, since the motor truck was not running over five times as fast as the man walked, it could not go over 200 feet while he walked 40 feet; that, therefore, he did not look north just as he stepped into the street or he would have seen the motor truck, hence the physical facts show him guilty of contributory negligence in not so looking.

The vice of this argument is in the assumption that the speed of both man and machine as testified to were indisputably established physical facts, whereas they were mere estimates. Either one or both of these estimates may have been incorrect. Mere estimates, given as such, can hardly discredit positive testimony to the point of incredibility, as a matter of law. It would be equally as sound to take respondent's testimony that he looked north and saw no vehicle, as a physical fact. The irresistible inference would then be either that the speed of the man was overestimated or that of the machine was underestimated. Soundly, neither the speed of the machine, nor its position at the time when the respondent stepped into the street, nor the speed of the man, nor the fact that he looked north just after he stepped into the street, were admitted or indisputably established facts, physical or otherwise. They were all questions for the jury upon the evidence.

On the other hand, all of the evidence strongly tends to show that the appellant was guilty of negligence in failing to keep a reasonably vigilant lookout, in failing to sound a horn or gong, and in running in or near the middle of the street. Even if the respondent was also guilty of negligence in failing to look north when he first started to cross the street, he was not necessarily negligent at the time he was struck. Every witness who testified as to the collision, save the driver

of the truck, placed the respondent at the time practically outside of the zone of danger reasonably to be anticipated from automobiles coming from the north, and where it would be his duty to begin looking south for vehicles which might be approaching from that direction. A city ordinance in evidence made it the duty of drivers of automobiles "to keep to the right and as near the right hand curb as possible." Every witness, save the chauffeur and one other, testified that the respondent, when he was struck, had reached a point inside of the west rail of the west car track, and the respondent and three eyewitnesses testified that, when he was struck, he had reached the middle of the street between the east rail of the west car track and the west rail of the east car track. Obviously, he could not have been struck in either place had the driver of the motor truck observed the ordinance, a course of action upon which the respondent had the right to rely.

II. It is next contended that the court erred in submitting to the jury the question whether the appellant, by an observance of the rule of "last clear chance," could have avoided the accident. It is first argued that this rule cannot be invoked because the complaint did not admit contributory negligence on the respondent's part. The answer, however, denied any negligence of the appellant and alleged affirmatively that the respondent's injury was due to his own negligence. This was equivalent to an allegation that contributory negligence of the respondent was the proximate cause of the injury. It was put in issue by the denial in the reply.

The rule of last clear chance is grounded in the doctrine of proximate cause. Like any other phase of proximate cause, evidence to sustain it may be submitted to the jury under the general issue. We cannot subscribe to the doctrine that the rule of last clear chance can only be invoked by a plea in confession and avoidance. It would be more logical to say that the defense of contributory negligence could not be made or submitted to the jury without confession of the primary

8—75 WASH.

negligence of the appellant. We have never so held, notwithstanding the fact that contributory negligence is in this state an affirmative defense which must be specially pleaded.

The denial of contributory negligence is not necessarily a denial of any negligence on the part of the injured person. It is only a denial of negligence contributing directly to the injury. The doctrine of last clear chance, while presupposing some negligence on a plaintiff's part, relieves that negligence of its contributory character where the injury results proximately from the failure of a defendant to embrace the last clear chance to avoid the injury. Moreover, the allegation of the complaint (in addition to specific allegations of negligence) that the appellant was operating the motor truck "recklessly and without regard to the safety of pedestrians on the highway," was sufficient to admit evidence of a violation of the last clear chance rule, in the absence of a motion to make more specific.

III.   It is also claimed that the evidence shows that both parties were concurrently negligent up to the time of the accident, and that, therefore, the last clear chance rule cannot apply. Whether the respondent negligently failed to look for approaching vehicles before entering upon the street was clearly a question for the jury. But assuming that he did fail to look, he was not negligent, as a matter of law, in failing to be continuously thereafter looking to ascertain if auto-cars were approaching from behind him, especially impeded as he was by the sack of grain upon his left shoulder. *Lewis v. Seattle Taxicab Co.*, 72 Wash. 320, 130 Pac. 341; *Ludwigs v. Dumas*, 72 Wash. 68, 129 Pac. 903; *Hillebrant v. Manz*, 71 Wash. 250, 128 Pac. 892, 895, and cases there cited. Even assuming, therefore, that he was negligent in the first instance, it was for the jury to say whether his negligence continued up to the time of the accident, or whether it terminated after he got into the street so as to be in plain view of drivers of auto-cars. This is especially true in view

of the almost conclusive evidence that no horn or gong was sounded.

The appellant cites certain authorities, most of them railroad or street car cases, and some of them cases arising on injuries to trespassers on railroad tracks, to sustain the contention that in no case can a plaintiff recover where his negligence continues up to the time of the injury. The authorities cited hardly bear that construction. *Gilbert v. Erie R. Co.*, 97 Fed. 747; *Missouri Pac. R. Co. v. Moseley*, 57 Fed. 921; *Kirtley v. Chicago, M. & St. P. R. Co.*, 65 Fed. 386; *Butler v. Rockland T. & C. St. R. Co.*, 99 Me. 149, 58 Atl. 775, 105 Am. St. 267; *Hoffard v. Illinois Cent. R. Co.*, 138 Iowa 543, 110 N. W. 446, 16 L. R. A. (N. S.) 797; *Drown v. Northern Ohio Traction Co.*, 76 Ohio St. 234, 81 N. E. 326, 118 Am. St. 844, 10 L. R. A. (N. S.) 421; *Bogan v. Carolina Cent. R. Co.*, 129 N. C. 154, 39 S. E. 808, 55 L. R. A. 418; *Dunlap v. Chicago, R. I. & P. R. Co.*, 87 Kan. 197, 123 Pac. 754; *Plinkiewisch v. Portland R. L. & P. Co.*, 58 Ore. 499, 115 Pac. 151. At any rate, this court has held, in accordance with many courts and with what we conceive to be the more logical as well as the more humane rule, that where the peril of a traveler on the highway is actually discovered and should be appreciated by the operator of a street car, or other agency of danger, there arises a new duty to exercise all reasonable care to avoid injury, and the failure to exercise such care, if it results in injury, will render a defendant liable notwithstanding the continuance of the plaintiff's negligence up to the instant of the injury. *O'Brien v. Washington Water Power Co.*, 71 Wash. 688, 129 Pac. 391; *Dyerson v. Union Pac. R. Co.*, 74 Kan. 528, 87 Pac. 680, 7 L. R. A. (N. S.) 132; *Bruggeman v. Illinois Cent. R. Co.*, 147 Iowa 187, 123 N. W. 1007.

IV. Finally, it is contended that, even conceding that the last chance doctrine applies, the instructions given as embodying that doctrine were erroneous. They were as follows:

"(24)   If you should find from the evidence that the
plaintiff was guilty of contributory negligence in not seeing
the defendant's automobile approaching, yet this negligence
will not defeat the plaintiff's right to recover, if the driver of
the defendant's automobile actually saw, *or if by keeping a
reasonably vigilant lookout could have seen,* the exposed con-
dition of danger of the plaintiff, if you so find, in time to have
avoided the injury by the exercise of reasonable care, and
negligently failed to exercise such reasonable care."

"(25)   If you believe from the evidence that at the time
of the alleged injury the plaintiff was walking across Howard
street in the city of Spokane, diagonally from the west side
of said street to the east side thereof, and at the same time
the driver of defendant's automobile was driving an automo-
bile belonging to the defendant along said street in the di-
rection of said plaintiff, and that said driver saw, *or by the
exercise of reasonable care and caution could have seen the
plaintiff in season to have stopped the automobile, altered its
course, or in some way avoided the accident;* and if the jury
further believes, from the evidence that the said driver did not
do so, but carelessly and negligently permitted the said auto-
mobile to run against plaintiff and knock him down, and there-
by injure him, as charged in the complaint, this would be neg-
ligence on the part of said driver, and the defendant is liable
for such negligence."

The objection is directed to the parts which we have itali-
cized.   The courts are wide of an agreement as to the extent
of the last chance doctrine as applied to the operation of
trains, street cars, automobiles and the like.   But what we
conceive to be the sounder view is this: assuming that a trav-
eler has negligently placed himself in a dangerous situation
upon the highway, then, as we have seen, whenever the person
in control of such agency actually sees the traveler's situation
and should appreciate his danger, the last chance rule ap-
plies, without regard to the continuing negligence of the
traveler concurring with that of the operator up to the very
instant of the injury.   A second situation to which the rule
applies is this: where the person in control of such agency,
by keeping a reasonably careful lookout commensurate with

the dangerous character of the agency and the nature of the locality, could have discovered and appreciated the traveler's perilous situation in time, by the exercise of reasonable care, to avoid injuring him, and injury results from the failure to keep such lookout and to exercise such care, then the last chance rule applies, regardless of the traveler's prior negligence, whenever that negligence has terminated or culminated in a situation of peril from which the exercise of ordinary care on his part would not thereafter extricate him. This last phase of the rule applies whenever injury results from new negligence or from a continuance of the operator's negligence after that of the traveler has so ceased or culminated.

The application of the rule to the first situation, as above indicated, needs no support outside of simple considerations of humanity. Any other view would condone wilful or wanton injury. The application of the rule to the second situation indicated has been sustained by this court, and we think soundly, in a case of injury to an automobile stalled through its owner's negligence on a railway crossing. *Nicol v. Oregon-Washington R. & Nav. Co.*, 71 Wash. 409, 128 Pac. 628. Another court has upheld it in case of injury to a portable steam engine similarly situated. *Bullock v. Wilmington & W. R. Co.*, 105 N. C. 180, 10 S. E. 988. The law will hardly hold more cheap, or view with less solicitude, the safety or life of a human being. We have recognized the same principle in cases of personal injury. *Morris v. Seattle, Renton & Southern R. Co.*, 66 Wash. 691, 120 Pac. 534; *Gilcher v. Seattle Elec. Co.*, 69 Wash. 78, 124 Pac. 218; *Herrick v. Washington Water Power Co.*, ante p. 149, 134 Pac. 934. For an elaborate discussion and a clear recognition of the soundness of the application of the rule as we have stated it, see *Teakle v. San Pedro, L. A. & S. L. R. Co.*, 32 Utah 276, 90 Pac. 402, 10 L. R. A. (N. S.) 486, where the court says:

"This court, in harmony with the great weight of authority, seems to be committed to the rule (when the injured or de-

ceased person was not a trespasser) that the defendant's act or negligence will be regarded as the sole proximate cause of the injury, not only when relating to a breach of duty occurring after the consequences of contributory negligence have been discovered, but also when, in the exercise of ordinary care, such consequences could have been discovered, if a breach of duty intervened or continued after the commission of the contributory negligence. While the breach of duty must be subsequent to the commission of the contributory negligence, yet such breach of duty may be before, as well as after, the discovery of the peril."

See, also, an exhaustive discussion of the last chance rule in the note to *Bogan v. Carolina Cent. R. Co.,* 55 L. R. A. 418, in which the compiler, by a summary of the authorities, at page 465, reaches the conclusion that the view which we have expressed is that supported by a decided tendency of the courts.

An examination of a vast number of authorities induces our conviction that the application of the rule as above outlined is much broader than that countenanced by many courts, and is as broad as can be applied without in effect overruling all of our own decisions sustaining the defense of contributory negligence and adopting in its stead the doctrine of comparative negligence, a doctrine against which this court has set its face from the beginning. *Smith v. Union Trunk Line,* 18 Wash. 351, 51 Pac. 400, 45 L. R. A. 169; *Wolf v. Washington R. & Nav. Co.,* 37 Wash. 491, 79 Pac. 997; *Franklin v. Engel,* 34 Wash. 480, 76 Pac. 84. There are certain cases from other jurisdictions in which instructions which might be considered as implying a broader application of the last chance rule than we have outlined have been sustained. *Crowley v. Louisville & N. R. Co.,* 21 Ky. Law 1434, 55 S. W. 434; *Pittsburgh, C. C. & St. L. R. Co. v. Lewis,* 18 Ky. Law 957, 38 S. W. 482; *Flynn v. Louisville R. Co.,* 23 Ky. Law 57, 62 S. W. 490; *Shaw v. Salt Lake City R. Co.,* 21 Utah 76, 59 Pac. 552. But the facts and the discussions in those cases show that a stronger and a sounder ground for

recovery was present, in that the plaintiff was guilty of only slight negligence, and slight negligence on the part of a plaintiff cannot be held to contribute or enter as one of the concurrent proximate causes of injury resulting from palpable and continuous negligence on the part of a defendant. There is much in the evidence in the case in hand from which the jury might reasonably have found that respondent was free from negligence at the time he was injured, or that his negligence, if any, was only slight. To hold slight negligence as contributory would be to impose the rule of extraordinary care. *Lamoon v. Smith Cement Brick Co.,* 74 Wash. 164, 132 Pac. 880.

From what we have said as to the proper limits of the rule of last clear chance as a ground of liability, it is clear that the instructions complained of are erroneous. In the first place, the reference in instruction No. 24 to the plaintiff's negligence as "contributory" is inaccurate and confusing, as connected with the rule of last clear chance. If the rule applies, then it relieves the respondent's negligence of its contributory quality. In the second place, the italicized words in both instructions should have been qualified so as to embody the thought that if the jury found that the plaintiff's negligence had, prior to the instant of injury, terminated or culminated by placing him in a situation of danger such that the exercise of ordinary care on his part alone would not thereafter have avoided injury without the cooperation of care on the appellant's part, and that the driver of the appellant's motor truck by keeping a reasonably vigilant lookout could have seen and appreciated the exposed condition of the plaintiff in time to avoid the injury by the exercise of reasonable care, and negligently failed to keep such lookout or to exercise such care, then the plaintiff's prior negligence would not defeat his right to recover. Better words, of course, could easily be found, but the instruction should have embodied in some manner the thought

which we have endeavored to express. Both instructions, so far as they state the rule as to actual discovery of peril, are practically faultless.

The court also instructed the jury to the effect that if it found the plaintiff's failure to look after stepping into the street was contributory negligence, and that such negligence continued up to the last moment before the accident and contributed to it as a proximate cause, he cannot recover. This instruction was in direct conflict with the two instructions above quoted. It is impossible to know what effect the giving of the two erroneous instructions and their manifest conflict with this instruction had upon the verdict of the jury. In such a case a new trial is imperative.

In order that this decision may not be construed as narrowing the questions properly submitted to the jury in such cases, we deem it proper to state that, although the rule of. the last clear chance is a phase of the question of proximate cause, it does not cover the whole ground of proximate cause. It applies only to a status of danger usually originating in the plaintiff's negligence, and relieves that negligence of its contributory character under certain conditions. It must not be forgotten that the failure of the operator of a locomotive, train, street car, automobile or other agency of danger to travelers on the highway to keep a vigilant lookout is negligence in any event, entailing a liability for injury proximately resulting therefrom. Where there are counter charges of contributory negligence, the jury may find the negligence of either party proximate and that of the other remote, according to all of the circumstances. The usual instruction as to proximate cause is, therefore, always proper even when an instruction as to the last clear chance would not be. *Benson v. English Lumber Co.*, 71 Wash. 616, 129 Pac. 403; *Gray v. Washington Water Power Co.*, 27 Wash. 713, 68 Pac. 360.

The judgment is reversed, and the cause is remanded for a

new trial. The payment of the costs may await the final disposition of the cause.

MORRIS and MAIN, JJ., concur.

FULLERTON, J., (concurring)—I am of the opinion that the second instruction above quoted (No. 25) is not erroneous. I therefore concur in the result.