[No. 20155.   Department Two.   December 28, 1926.]

CHARLES A. JOHNSON, *Respondent*, v. CITY OF SEATTLE, *Appellant*.[1]

[1] STREET RAILROADS (15, 29)—INJURY TO PERSON ON TRACKS—NEGLIGENCE OF MOTORMAN—QUESTION FOR JURY. The negligence of a street car motorman, approaching a platform where persons were waiting to board a car, is a question for the jury, where it appears that he speeded up on nearing the platform without sounding any warning until within a few feet of a pedestrian crossing the tracks to the platform and intending to take the street car, which failed to stop as expected.

[2] SAME (19, 30)—CONTRIBUTORY NEGLIGENCE OF PERSONS CROSSING TRACK—QUESTION FOR JURY. The contributory negligence of a pedestrian, crossing the street car tracks to the loading platform, is a question for the jury, where it appears that he looked and saw a car about half a block away, coming slowly and thought he had plenty of time to cross, which others were doing at the time, and that the car increased its speed as it neared the platform, without stopping for passengers and without warning until within a few feet of him.

[3] SAME (23)— INJURY TO PERSON ON TRACK — CONTRIBUTORY NEGLIGENCE—LAST CLEAR CHANCE—INSTRUCTIONS. It is error to give an instruction upon the doctrine of last clear chance where a pedestrian struck by a street car, was guilty of negligence continuing up to the time of his injury and the motorman did not actually see him until the car was so close that it was impossible to stop.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered April 13, 1926, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a pedestrian struck by a street car.   Reversed.

*Thomas J. L. Kennedy*, and *Arthur Schramm*, for appellant.

*E. P. Donnelly*, for respondent.

[1]Reported in 250 Pac. 409.

BRIDGES, J.—This is a personal injury case. The city of Seattle operates a double track street railway between West Seattle and the city proper. For the most part, the tracks are elevated, but in the neighborhood of Lander street, they are laid on the ground. At or near this street, the city has provided platforms from which passengers may alight from the outgoing cars or get aboard the ingoing cars. The outgoing platform is immediately west of and adjoining the outbound track, and the other platform is immediately east of and adjoining the ingoing track. Persons desiring to take an inbound car must first come upon the westerly or outbound platform, then cross the double tracks to the ingoing platform. The space between the tracks is planked.

[1] About five o'clock in the afternoon, several longshoremen came onto the outbound platform and crossed the tracks to the inbound platform for the purpose of taking a car to the city. The plaintiff was one of these men. His testimony tends to show that, immediately before leaving the outbound platform, he looked to his right and saw an inbound car approaching. At that time, it was about half a block away and coming rather slowly, and he thought it was going to stop to take on passengers, there being a number of persons then on the ingoing platform. He thought he had plenty of time to cross ahead of the car and undertook so to do. He did not look again until he was stepping onto the inbound track, when, to his surprise, he saw the car immediately upon him. He undertook to leap to the inbound platform and almost succeeded, because it was the side of the car nearest that platform which struck and injured him. There was some testimony tending to show that the car did not sound its gong until very close to the plaintiff and that, after he

first saw it about half a block away, it speeded up. Although the testimony does not expressly so show, evidently this car was loaded with passengers and did not intend to stop at the Lander station. The motorman testified that he did not see the plaintiff until the car was within ten or fifteen feet of him, and that he then did everything possible to stop his car and avoid hitting the plaintiff, but that it was impossible for him so to do, because of the short distance he was then away from the plaintiff. There was a verdict for the plaintiff, and the city has appealed.

It is first contended that the testimony does not show any actionable negligence on the part of the motorman. We think, however, there was sufficient in this regard to require the case to be submitted to the jury.

[2] The appellant's most serious contention is that the plaintiff was, as a matter of law, guilty of negligence which contributed to his injury, and therefore cannot recover. As previously noted, his testimony showed that, before he left the outbound platform, he looked to his right to see if any inbound car was coming, and saw the one in question, which was then about half a block away, and that it was coming rather slowly. He thought he had plenty of time to cross the tracks before the car would reach him. There was also testimony to the effect that, as the car came closer to Lander street, it increased its speed. Other testimony showed that other persons were crossing these tracks at about the same time the respondent was, one man in particular being only a part of a step ahead of him. Under these facts, we cannot say, as a matter of law, that the respondent was guilty of negligence. We are, therefore, of the opinion that the case was properly submitted to the jury on the question of the negligence of the motorman and of the respondent.

[3] The trial court gave an instruction based on the doctrine of the last clear chance. We think this was error. There are two branches to that doctrine. One is that if the plaintiff has been guilty of negligence, and that negligence continues up to the time of the injury, then the person driving the vehicle which does the damage is not liable unless he actually sees the plaintiff in time, by the exercise of ordinary care, to have avoided the injury. The other branch of the doctrine is that if the plaintiff has been guilty of negligence, and that negligence has placed him in a position of danger, and his negligence has ceased, then there is a duty upon the person driving the vehicle to exercise ordinary care to see the person in the position of danger and also to exercise ordinary care to avoid the accident. *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916 A, 943; *Leftridge v. Seattle*, 130 Wash. 541, 228 Pac. 302.

In this case, if the respondent was guilty of negligence, that negligence continued up to the time of his injury. Consequently, there was no legal duty devolving upon the motorman, unless he actually saw the respondent in time, by the exercise of ordinary care, to have avoided the injury. But the only testimony on this question is to the effect that the motorman did not actually see the respondent until his car was so close to him that it was impossible to stop it. Under these circumstances, the doctrine of the last clear chance does not apply, and it was, therefore, error to give any instruction to the jury concerning it.

Because of the error pointed out, the judgment is reversed, and the cause remanded for a new trial.

Tolman, C. J., Mackintosh, Askren, and Parker, JJ., concur.